**CALDARELLI  HEJMANOWSKI & PAGE LLP**
William J. Caldarelli (SBN #149573)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Tel: (858) 720-8080
Fax: (858) 720-6680
wjc@chplawfirm.com

**FABIANO LAW FIRM, P.C.**
Michael D. Fabiano (SBN #167058)
12526 High Bluff Drive, Suite 300
San Diego, CA  92130
Telephone:  (619) 742-9631
mdfabiano@fabianolawfirm.com

**OSBORNE LAW LLC**
John W. Osborne (Appointed *Pro Hac Vice*)
33 Habitat Lane
Cortlandt Manor, NY  10567
Telephone:  (914) 714-5936
josborne@osborneipl.com

**WATTS LAW OFFICES**
Ethan M. Watts (SBN #234441)
12340 El Camino Real, Suite 430
San Diego, CA  92130
Telephone:  (858) 509-0808
Facsimile:  (619) 878-5784
emw@ewattslaw.com

Attorneys for Plaintiff Ameranth, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERANTH, INC., | Case No.  3:12-CV-2350-IEG -BGS |
| Plaintiff, | **SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| APPLE, INC., | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Ameranth, Inc., (herein "Ameranth") for its Second Amended Complaint against defendant Apple, Inc. (herein "Apple" or "Defendant"), avers as follows:

## PARTIES

1. Plaintiff Ameranth is a Delaware corporation having a principal place of business at 5820 Oberlin Drive, Suite 202, San Diego, California 92121. Ameranth develops, manufactures and sells, *inter alia*, hospitality industry, entertainment, restaurant and food service information technology solutions under the trademarks 21st Century Communications™, and 21st Century Restaurant™, among others, comprising the synchronization and integration of hospitality information and hospitality software applications between fixed, wireless and/or internet applications, including but not limited to computer servers, web servers, databases, affinity/social networking systems, desktop computers, laptops, "smart" phones and other wireless handheld computing devices. Ameranth's "Information Management and Synchronous Communications" patent family has been widely recognized as visionary, and the original patent in this family, U.S. Patent No. 6,384,850, was cited as a prior art reference by the USPTO in two Apple iPhone patents issued to named inventors Bas Ording and Steven P. Jobs (thus having put Apple on notice as to this Ameranth patent at least as early as March 31, 2010).  To date, eighteen companies have licensed patents in this Ameranth patent family.

2. Defendant Apple is, on information and belief, a California corporation having a principal place of business and headquarters in Cupertino, California. On information and belief, Apple makes, uses, sells and/or offers for sale, computer technology products, including personal computers, mobile communications devices, portable digital music and video players and related hardware, software, components and/or systems within this Judicial District,

including their integrated Passbook System ("PBS"), which includes the "pass styles" that Apple has defined as "boarding pass" and "event ticketing" applications within Passbook, and which permits the management, maintenance, downloading, and/or storage of, *inter alia*, airline boarding passes, hotel reservations, movie tickets, and event tickets, and is integrated with iPhone 5 and other iPhone and iPod Touch devices that are running Apple's iOS 6 software, and linked to/with Apple's iCloud, the "Apple Notification Service", and Apple's Safari browser.   Apple has already announced and/or implemented Passbook partnerships integrating Passbook-enabled systems with defendants in other Ameranth patent enforcement actions including Ticketmaster, StubHub, Starwood Hotels, Fandango, Ticketfly, Eventbrite, Ticketbiscuit, Starbucks and others, as well as integrating Apple's Siri speech-recognition and voice control/command application with the systems of defendants such as OpenTable and Fandango.   Industry analysts have called Passbook a "game changer." Former Apple senior vice president Scott Forstall, in demonstrating Passbook in 2012 with stored tickets and passes including movie tickets, airline boarding passes, and concert tickets, asserted that "Passbook is the best way to collect all of your passes in one place."   As Apple describes it, within the Passbook application itself, "Passbook is the simplest way to get all your passes in one place.  Passbook puts your boarding passes, movie tickets, retail coupons, loyalty cards, and more all in one place.  They'll also be ready on your lock screen at just the right time and place.  You can add passes to Passbook through apps, emails, and websites from participating airlines, theatres, stores and more."

3.  On information and belief, among the other computer technology products that Apple makes, uses, sells and/or offers for sale include all models of the iPhone and iPod Touch, and all versions of Apple's iOS mobile operating system, and tools for developing apps for iOS devices including the iOS Simulator, which, according to Apple, "allows you to rapidly prototype and test

builds of your app during the development process. Installed as part of the Xcode tools along with the iOS SDK, iOS Simulator runs on your Mac and behaves like a standard Mac app while simulating an iPhone or iPad environment. Think of the simulator as a preliminary testing tool to use before testing your app on an actual device.  iOS Simulator enables you to simulate several iOS devices and several versions of the iOS operating system. Each simulated software version is considered its own simulation environment, independent of the others, with its own settings and files. These settings and files exist on every device you test within a simulation environment. … By simulating the operation of your app in iOS Simulator, you can … Find major problems in your app during design and early testing … [and] Test your app using developer tools that are available only for iOS Simulator … iOS Simulator is a great tool for rapid prototyping and development before testing your app on a device. iOS Simulator also has features that can assist you in testing and debugging both iOS apps and web apps."

## <u>JURISDICTION AND VENUE</u>

4.   This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 271, 281-285.

5.   This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.   On information and belief, Apple engages in the offer for sale or license and sale or license of computer technology products, including personal computers, mobile communications devices, portable digital music and video players and related hardware, software, components and/or systems, including this Judicial District, including the PBS and Siri as defined herein.

7.   This Court has personal jurisdiction over Apple because Apple commits acts of patent infringement in this Judicial District including, *inter alia*, making, using, offering for sale or license, and/or selling or licensing infringing services, products, software, components and/or systems in this Judicial District.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

Additionally, Apple has already appeared in this action and submitted to the jurisdiction of the Court.  Apple has continued to engage in and perform such acts of infringement since the filing of the original complaint in this matter accusing Apple of infringement of the Ameranth patents at issue herein.

8.  Venue is proper in this Judicial District under 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

**BACKGROUND**

9.  Ameranth was established in 1996 to develop and provide its 21st Century Communications™ innovative information technology solutions for the hospitality industry (inclusive of, *e.g.,* restaurants, hotels, casinos, nightclubs, cruise ships, and other entertainment and sports venues).  Ameranth has been widely recognized as a technology leader in the provision of wireless and internet-based systems and services to, *inter alia*, restaurants, hotels, casinos, cruise ships and entertainment and sports venues.  Ameranth's award winning inventions enable, in relevant part, generation and synchronization of menus, including but not limited to restaurant menus, event tickets, reservations, and other products across fixed, wireless and/or internet platforms as well as synchronization of hospitality information and hospitality software applications across fixed, wireless and internet platforms, including but not limited to, computer servers, web servers, databases, affinity/social networking systems, desktop computers, laptops, "smart" phones and other wireless handheld computing devices.

10.  Ameranth began development of the inventions leading to the patents in this patent family, including the patents-in-suit, in the late Summer of 1998, at a time when the then-available wireless and internet hospitality offerings were extremely limited in functionality, were not synchronized and did not provide an integrated system-wide solution to the pervasive ordering, reservations, affinity program and information management needs of the hospitality industry.

Ameranth uniquely recognized the actual problems that needed to be resolved in order to meet those needs, and thereafter conceived and developed its breakthrough inventions and products to provide systemic and comprehensive solutions directed to optimally meeting these industry needs.  Ameranth has expended considerable effort and resources in inventing, developing and marketing its inventions and protecting its rights therein.

11.   Ameranth's pioneering inventions have been widely adopted and are thus now essential to the modern wireless hospitality enterprise of the 21st Century. Ameranth's solutions have been adopted, licensed and/or deployed by numerous entities across the hospitality industry.

12.   The adoption of Ameranth's technology by industry leaders and the wide acclaim received by Ameranth for its technological innovations are just some of the many confirmations of the breakthrough aspects of Ameranth's inventions. Ameranth has received twelve different technology awards (three with "end customer" partners) and has been widely recognized as a hospitality wireless/internet technology leader by almost all major national and hospitality print publications, *e.g.*, The Wall Street Journal, New York Times, USA Today and many others.  Ameranth was personally nominated by Bill Gates, the Founder of Microsoft, for the prestigious Computerworld Honors Award that Ameranth received in 2001 for its breakthrough synchronized reservations/ticketing system with the Improv Comedy Theatres.   In his nomination, Mr. Gates described Ameranth as "one of the leading pioneers of information technology for the betterment of mankind."  This prestigious award was based on Ameranth's innovative synchronization of wireless/web/fixed hospitality software technology.   Subsequently, the United States Patent and Trademark Office granted Ameranth a number of currently-issued patents, two of which are the basis for this lawsuit.  Ameranth has issued press releases announcing these patent grants on business wires, on its web sites and at

numerous trade shows since the first of the two presently-asserted patents issued in 2002.   A number of companies have licensed patents and technology from Ameranth, recognizing and confirming the value of Ameranth's innovations.   At all relevant times, Ameranth marked its own products with the numbers of the Ameranth patents then issued, thereby providing companies, competitors and participants in the hospitality industry with notice of Ameranth's patents. Furthermore, companies that license Ameranth's products have marked their products with Ameranth's patent numbers, thereby also providing notice of Ameranth's patents.

13.   The Ameranth patents asserted herein, U.S. Patent No. 6,384,850 (the "'850 patent"), U.S. Patent No. 6,871,325 (the "'325 patent"), U.S. Patent No. 6,982,733 (the "'733 patent"), and U.S. Patent No. 8,146,077 (the "'077 patent") are all patents in Ameranth's "Information Management and Synchronous Communications" patent family.

14.   Apple is well aware of this Ameranth patent family.   One of the Ameranth patents-in-suit, U.S. Patent No. 6,384,850 – the first patent issued in this Ameranth patent family – was cited as a prior art reference in two Apple iPhone patents issued to named inventors Bas Ording and Steven P. Jobs.   Also, the patents in this Ameranth patent family have been asserted in several patent enforcement actions against Apple business partners, as noted above.   Further, Apple has had knowledge of this lawsuit, and the patent claims asserted herein, since the filing of the original complaint in September of 2012, and has continued its infringing activities nonetheless.

## RELATED CASES PREVIOUSLY FILED

15.   Ameranth is also currently asserting claims of these same patents in separate lawsuits, against other defendants, that are already pending in this Court. The first-filed lawsuit asserts claims of the '850 and '325 patents and is entitled *Ameranth v. Pizza Hut, Inc. et al.*, Case No. 3:11-cv-01810-DMS-WVG.

-6-

Lawsuits subsequently filed by Ameranth in this Court, asserting claims of the '077 patent, include Case Nos. 3:12-cv-00729-DMS-WVG; 3:12-cv-00731-DMS-WVG; 3:12-cv-00732-DMS-WVG; 3:12-cv-00733-DMS-WVG; 3:12-cv-00737-DMS-WVG; 3:12-cv-00738-JLS-NLS (settled); 3:12-cv-00739-DMS-WVG and 3:12-cv-00742-DMS-WVG.  Other lawsuits filed by Ameranth in this Court asserting claims of the '850, '325, and '077 patents are Case No. 3:12-cv-00858-DMS-WVG;   3:12-cv-1201-JLS-NLS   (settled):   3:12-cv-01627-DMS-WVG; 3:12-cv-01629-DMS-WVG; 3:12-cv-01630-DMS-WVG; 3:12-cv-01631-DMS-WVG; 3:12-cv-01633-DMS-WVG; 3:12-cv-01634-DMS-WVG; 3:12-cv-01636-DMS-WVG;   3:12-cv-01640-DMS-WVG;   3:12-cv-01642-DMS-WVG; 3:12-cv-01643-DMS-WVG;  3:12-cv-01644-DMS-WVG;  3:12-cv-01646-DMS-WVG 3:12-cv-01647-JLS-NLS  (settled); 3:12-cv-01648-DMS-WVG;  3:12-cv-01649-DMS-WVG;   3:12-cv-01650-DMS-WVG;   3:12-cv-01651-DMS-WVG; 3:12-cv-01652-DMS-WVG;  3:12-cv-01653-DMS-WVG;  3:12-cv-01654-DMS-WVG; 3:12-cv-01655-DMS-WVG; 3:12-cv-01656-DMS-WVG; 3:12-cv-01659-DMS-WVG;  3:13-cv-00350-DMS-WVG;  3:13-cv-00352-DMS-WVG;  3:13-cv-00353-DMS-WVG;  3:13-cv-0836-DMS-WVG  (settled) and  3:13-cv-01072-DMS-WVG.  All of the above still-pending cases have been consolidated for pre-trial through claim construction except for 3:13-cv-00350-DMS-WVG; 3:13-cv-00352-DMS-WVG;   3:13-cv-00353-DMS-WVG;   and   3:13-cv-01072-DMS-WVG.

## **PASSBOOK**

16. In  or  about  September  2012,  Apple  introduced  Passbook,  a product/service currently available on iPhone and iPod Touch devices that are running Apple's iOS 6 software or iOS 7 software.  (This includes both the larger-screen iPhone 5 devices and the smaller-screen iPhone 4 and 4S devices. iOS 6 and iOS 7 enable software to be written so that the linked user interface

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

screens are presented in the screen dimensions that correspond to each user's iPhone screen size and characteristics.)

17.   Adoption of Passbook has been swift.  For example, one writer reported a marketing study that Passbook was responsible for "hundreds of thousands" of transactions just in the first few months after its introduction; and American Airlines reported in fall 2012 that it processes about 20,000 Passbook passes each day and that it has about 1.5 million active Passbook users. Apple encourages and supports the adoption and spreading of Passbook.  Apple has created, and entered into with developers and companies using Passbook, various agreements to govern and encourage the use of Passbook, including the "Passbook Marketing Agreement" and the "iOS Developer Program License Agreement", and Apple has provided detailed documentation to developers and companies to instruct, promote, and further encourage the widespread use of Passbook.   As one American Airlines official stated regarding American Airlines' implementation of Passbook, "Apple did a really good job of defining the spec and putting out all the required technical documents. It was one of the more straightforward implementations for our tech team."

18.   The Passbook "pass styles" that Apple has defined as "boarding pass" and "event ticketing" permit the management, maintenance, downloading, and/or storage of, *inter alia*, airline boarding passes, hotel reservations, movie tickets, restaurant gift cards, and event tickets to an iPhone or iPod Touch, from which the ticket or boarding pass can be displayed and scanned at, for example, the appropriate movie theatre, event venue, hotel, or airport.  Passbook now features, for example,  AMC and Fandango movie tickets, Major League Baseball game tickets, Ticketmaster, LiveNation, StubHub, Eventbrite, Ticketfly, Ticketbiscuit, Interactive Ticketing, and Goldstar event tickets,  gift cards for restaurants and other establishments, Starbucks Coffee prepaid cards and loyalty cards, Starwood hotel reservations and loyalty cards (including a unique Passbook card for each of

Starwood's more than 1,000 properties), Hyatt Hotels reservations, membership and loyalty programs including Passport, tours and other hospitality events booked through Checkfront, Discover e-certificates/loyalty bonuses, and Amtrak, American Airlines, Delta Airlines. Air Canada, Lufthansa, and United Airlines tickets and boarding passes.

19.   Passbook may be used by downloading a Passbook-compatible app (e.g., for Fandango, Ticketmaster, StubHub, Eventbrite, Hyatt Hotels, Delta Airlines, or United Airlines) from Apple's "App Store" for the merchant corresponding to the "tickets" that are to be stored in Passbook.  On information and belief, Apple reviews and tests each app (including Passbook-compatible apps), including testing the app on iPhones and/or iPod Touch devices, prior to approving the app to appear in the Apple App Store for downloading by consumers, and Apple provides detailed instructions to app developers to test their own apps on iPhones and/or iPod Touch devices prior to submitting the app to Apple for approval.

20.   Another way of using Passbook is by receiving a confirmation e-mail, text, or instant message after a consumer purchase is made (e.g., for event tickets), and then clicking a "Download to Passbook" link in said message, after which the consumer's "tickets" are automatically stored in Passbook. Additionally, web sites and web pages can include Passbook passes as attachments or links, automatically storing them in Passbook after the link is clicked or tapped.  Boarding passes, event tickets, and other Passbook passes can be added directly to Passbook via an "Add to Passbook" badge created and distributed by Apple for placement within iOS apps, emails, and web pages.

21.   Additional Passbook features include the capability to remind a consumer, for example, (depending on which type of "pass" is stored on the iPhone or iPod Touch) which airport terminal their plane will depart from, where in an auditorium their concert seats are, or  how much money is remaining on a prepaid Starbucks card, utilizing Passbook's time-based and location-based

synchronization.  (Passbook uses "Data Detectors" to automatically add links to the text in the menu display fields on the back of a pass. Website URLs, street addresses and phone numbers are automatically detected by Passbook and turned into tappable web hyperlinks.)  Passbook also uses Apple's iCloud cloud storage to keep a Passbook user's passes and related data synchronized on multiple connected devices.  Passbook passes can be updated and synchronized via Apple Push Notifications utilizing Apple's servers.  Mobile payment services, including Square, can be integrated with Passbook so that payment cards or gift cards are automatically imported into Passbook and synchronized across all of a user's devices via iCloud, enabling payment/redemption at the point of purchase via Passbook.

## COUNT I

### Patent Infringement (U.S. Pat. No. 6,384,850)

### (35 U.S.C. § 271)

22.   Plaintiff reiterates and incorporates the allegations set forth in paragraphs 1-21 above as if fully set forth herein.

23.   On May 7, 2002, United States Patent No. 6,384,850 entitled "Information Management and Synchronous Communications System with Menu Generation" ("the '850 patent") (a true and copy of which is attached hereto as **Exhibit A**) was duly and legally issued by the United States Patent & Trademark Office.

24.   Plaintiff Ameranth is the lawful owner by assignment of all right, title and interest in and to the '850 patent.

25.   On information and belief, Apple directly infringes and continues to directly infringe one or more valid and enforceable claims of the '850 patent, in violation of 35 U.S.C. § 271(a) by making, using, offering for sale or license and/or selling or licensing infringing systems, products, and/or services in the United States without authority or license from Ameranth, including but not

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

limited to the Apple products/services that include, *inter alia*, the Passbook System (hereinafter "PBS") which includes the "pass styles" that Apple has defined as "boarding pass" and "event ticketing" applications within Passbook, which permits the management, maintenance, downloading, and/or storage of, inter alia, airline boarding passes, hotel reservations, movie tickets, and event tickets, and is integrated with iPhone 5 and other iPhone and iPod Touch devices that are running Apple's iOS 6 software, and linked to/with Apple's iCloud, the "Apple Notification Service", and Apple's Safari web browser.

26.   On information and belief, defendant Apple has indirectly infringed and continues to indirectly infringe one or more valid and enforceable claims of the '850 patent, in violation of 35 U.S.C. § 271(b), by actively, knowingly, and intentionally inducing direct infringement by other persons, by making, using, offering for sale or license and/or selling or licensing infringing systems, products, and/or services in the United States without authority or license from Ameranth, including but not limited to PBS.

27.   Apple infringes by its own actions and through, or in concert with, agents of Apple who are under the direction and control of Apple by virtue of contractual agreements between Apple and such parties, including, for example, IOS Developer Program Licensing Agreements and Passbook Marketing Agreements.

28.   On information and belief, systems including the PBS, as deployed and/or used by Apple, its agents, distributors, partners, affiliates, licensees, third-party businesses, and/or their customers, infringe one or more valid and enforceable claims of the '850 patent, by, *inter alia*, doing, or providing the capability for doing, at least one of the following: (a) Generating and transmitting menus in a system including a central processing unit, a data storage device, a computer operating system containing a graphical user interface, one or more displayable main menus, modifier menus, and sub-modifier menus, and

application software for generating a second menu and transmitting it to a wireless handheld computing device or a Web page; and/or (b) Enabling ticketing, reservations, and other hospitality functions via iPhone and iPod Touch devices, storing hospitality information and data on at least one central database, on at least one wireless handheld computing device, and on at least one Web server and Web page, and synchronizing applications and data, including but not limited to applications and data relating to ordering, between at least one central database, wireless handheld computing devices, and at least one Web server and Web page; utilizing an interface that provides a single point of entry that allows the synchronization of at least one wireless handheld computing device and at least one Web page with at least one central database; allowing information to be entered via Web pages, transmitted over the internet, and automatically communicated to at least one central database and to wireless handheld computing devices; allowing information to be entered via wireless handheld computing devices, transmitted over the internet, and automatically communicated to at least one central database and to Web pages.

29.   Ameranth has previously served Apple with infringement contentions in this action further describing the details of Apple's direct and indirect infringement of Ameranth's patents.   Those infringement contentions are attached hereto as **Exhibit E** and incorporated herein by reference.

30.   On information and belief, customers of Apple use the PBS in a manner that infringes upon one or more valid and enforceable claims of the '850 patent. Apple provides instruction and direction regarding the use of the PBS and advertises, promotes, and encourages the use of the PBS in a manner known and intended to infringe Ameranth's patents.

31.   On information and belief, Apple actively induces others to infringe the '850 patent in violation of 35 U.S.C. §271(b) by actively, knowingly and intentionally encouraging, aiding and abetting customers of Apple, including

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

1    consumers and those businesses identified elsewhere in this complaint, to use the

2    infringing PBS in the United States without authority or license from Ameranth,

3    with the knowledge that said customers of Apple were directly infringing the

4    '850 patent.  For example, Apple describes its PBS as an 'Ecosystem': "There are

5    three major parts to the Passbook life cycle; creation, management and

6    redemption. Passbook handles the middle, it lets users view and manage their

7    passes and provides lock screen integration. You are responsible for the two ends;

8    creating passes and redeeming passes."

9        32.   Apple has been aware of the '850 patent since at least March 31, 2010,

10   when the '850 patent was cited as a prior art reference in two Apple iPhone

11   patent applications which issued to Apple under named inventors Bas Ording and

12   Steven P. Jobs.  Despite having knowledge of the '850 patent for two and one

13   half years before Ameranth brought suit on the '850 patent, Apple continued its

14   infringing conduct. Also, three of the patents in this Ameranth patent family have

15   been asserted in several patent enforcement actions against Apple business

16   partners, as noted above, including OpenTable (lawsuit filed in August 2011).

17   Due to the degree of integration between Apple and OpenTable including, inter

18   alia, "direct SIRI integration" into OpenTable and the integration of OpenTable

19   functionality into Apple's iOS6, it is implausible that Apple was not informed of

20   the Ameranth suit against OpenTable as early as 2011.  Further, Apple has had

21   knowledge of this lawsuit, and the claims asserted herein, since the filing of the

22   original complaint in September of 2012, and has continued its infringing

23   activities nonetheless. Apple has thus obtained the level of knowledge required to

24   support a claim for inducement of infringement regarding Apple's actions

25   involving the Apple PBS in numerous different and independent ways.

26       33.  On information and belief, Apple also has actively induced, and

27   continues to actively induce, others to infringe the '850 patent, in violation of 35

28   U.S.C. §271(b), by actively, knowingly, and intentionally encouraging, aiding

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

and abetting customers and business partners of Apple, including, *inter alia*, software developers and businesses including those identified elsewhere in this complaint, to use the iOS Simulator in making, using, selling, and/or offering for sale infringing systems/products/services, (including encouraging, aiding and abetting use by such parties of Ameranth's inventive "preview" functionality as recited, *inter alia*, in '850 claim 10) without authority or license from Ameranth. iOS Simulator allows developers to simulate the environment of iPhone and iPad devices running any iOS version from the most current, back to iOS 3.4, and to build, test, and debug apps and web apps on Mac computers.  Apple provides extensive technical documentation and support to encourage, facilitate, and assist in the development of iPhone/iPad apps and the offering of said apps in Apple's App Store.   As Apple explains in its own documentation, "The iOS Simulator allows you to rapidly prototype and test builds of your app during the development process. Installed as part of the Xcode tools along with the iOS SDK, iOS Simulator runs on your Mac and behaves like a standard Mac app while simulating an iPhone or iPad environment. Think of the simulator as a preliminary testing tool to use before testing your app on an actual device. … iOS Simulator enables you to simulate several iOS devices and several versions of the iOS operating system. Each simulated software version is considered its own simulation environment, independent of the others, with its own settings and files. These settings and files exist on every device you test within a simulation environment."  As one example, as discussed above, Apple's marketing materials encourage use of the iOS Simulator in a way that infringes claims of the '850 patent, and tout the advantages of such use to achieve the same results/functionality provided by the '850 claims.  In offering and promoting its IOS Simulator, Apple is actively encouraging all iOS developers to use that tool. Customers and business partners of Apple directly infringe claims of the '850 patent by using the iOS Simulator in making, using, selling, and/or offering for

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

sale infringing systems/products/services including, *inter alia*, online/mobile ticketing systems of AMC, Fandango, Major League Baseball, Ticketmaster, LiveNation, StubHub, Eventbrite, Ticketfly, Ticketbiscuit, Interactive Ticketing and Goldstar, systems for providing online/mobile gift cards for restaurants and other establishments, Starbucks Coffee online/mobile system for providing prepaid cards and loyalty cards, Starwood hotel's system for providing reservations and loyalty cards (including a unique Passbook card for each of Starwood's more than 1,000 properties), online/mobile systems for managing and booking tours and other hospitality events booked through Checkfront, Discover's online/mobile system for providing e-certificates/loyalty bonuses, and Amtrak, American Airlines, Delta Airlines, Air Canada, Lufthansa, and United Airlines online/mobile systems for passenger ticketing and boarding passes, and other customers and business partners of Apple who use the iOS simulator in providing, *e.g.*, point of sale, online and mobile ordering, loyalty, restaurant reservations, hotel reservations and other hospitality functions and/or services including, *inter alia*, Domino's Pizza, Seamless, Micros Systems, OpenTable, Hyatt Hotels and OLO Online Ordering.

34.   As detailed above, Apple has had knowledge of the '850 patent since at least March 31, 2010, well before the filing of the complaint in this action.  Also, three of the patents in this Ameranth patent family have been asserted in several patent enforcement actions against Apple business partners, as noted above, including OpenTable (lawsuit filed in August 2011).  Due to the degree of integration between Apple and OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the integration of OpenTable functionality into Apple's iOS6, it is implausible that Apple was not informed of the Ameranth suit against OpenTable as early as 2011.  Further, Apple has had knowledge of this lawsuit, and the claims asserted herein, since the filing of the original complaint in September of 2012, and has continued its infringing activities nonetheless.

Apple has thus obtained the level of knowledge required to support a claim for inducement of infringement regarding Apple's actions involving the Apple iOS Simulator in numerous different and independent ways.

35.   On information and belief, Apple contributorily infringes and continues to contributorily infringe one or more valid and enforceable claims of the '850 patent, in violation of 35 U.S.C. § 271(c), by making, using, offering to sell and/or selling components of systems on which claims of the '850 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '850 patent.

36.   By making, distributing, selling, offering, offering to sell or license and/or selling or licensing the PBS, Apple provides non-staple articles of commerce to others, including those businesses identified elsewhere in this complaint, for use in infringing systems, products, and/or services.  Additionally, Apple provides instruction and direction regarding the use of the PBS and advertises, promotes, and encourages the use of the PBS in a manner known and intended to infringe Ameranth's patents.  Users of the PBS directly infringe one or more valid and enforceable claims of the '850 patent, for the reasons set forth hereinabove.

37.   Apple has long had knowledge of the '850 patent, as set forth above, at least as early as March 31, 2010.  Apple also has long  known that the PBS "boarding pass" and "event ticketing" pass styles are non-staple articles of commerce that have no substantial non-infringing uses, in that this is specialized software designed and intended for use, and actually used as a material part of the claimed invention and used in ticketing and reservations systems that infringe the '850 patent as set forth herein, including the ticketing and/or reservations systems of Fandango, StubHub, Ticketmaster, LiveNation, and Starwood.  Apple has thus obtained the level of knowledge required to support a claim for contributory infringement in numerous different and independent ways.

38.   On information and belief, the aforesaid infringing activities of defendant Apple have been done with knowledge and willful disregard of Ameranth's patent rights, making this an exceptional case within the meaning of 35 U.S.C. § 285.  As detailed above, Apple has had knowledge of the '850 patent since at least March 31, 2010, well before the filing of the complaint in this action.  Also, three of the patents in this Ameranth patent family have been asserted in several patent enforcement actions against Apple business partners, as noted above, including OpenTable (lawsuit filed in August 2011).  Due to the degree of integration between Apple and OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the integration of OpenTable functionality into Apple's iOS6, it is implausible that Apple was not informed of the Ameranth suit against OpenTable as early as 2011.  Further, Apple has had knowledge of this lawsuit, and the claims asserted herein, since the filing of the original complaint in September of 2012, and has continued its infringing activities nonetheless.  Apple has thus obtained the level of knowledge required to support a claim for willful infringement in numerous different and independent ways.  Apple's decision to continue its infringing activities after obtaining said knowledge constitutes objectively reckless behavior justifying a finding of willfulness.

39.   The aforesaid infringing activity of defendant Apple has directly and proximately caused damage to plaintiff Ameranth, including loss of profits from sales or licensing revenues it would have made but for the infringements.  Unless enjoined, the aforesaid infringing activity will continue and cause irreparable injury to Ameranth for which there is no adequate remedy at law.

//
//
//
//

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

## COUNT II

### Patent Infringement (U.S. Pat. No. 6,871,325)

### (35 U.S.C. § 271)

40. Plaintiff reiterates and reincorporates the allegations set forth in paragraphs 1-39 above as if fully set forth herein.

41. On March 22, 2005, United States Patent No. 6,871,325 entitled "Information Management and Synchronous Communications System with Menu Generation" ("the '325 patent") (a true and correct copy of which is attached hereto as **Exhibit B**) was duly and legally issued by the United States Patent & Trademark Office.

42. Plaintiff Ameranth is the lawful owner by assignment of all right, title and interest in and to the '325 patent.

43. On information and belief, Apple directly infringes and continues to directly infringe one or more valid and enforceable claims of the '325 patent, in violation of 35 U.S.C. § 271(a) by making, using, offering for sale or license and/or selling or licensing infringing systems, products, and/or services in the United States without authority or license from Ameranth, including but not limited to the PBS, as detailed above with respect to the '850 patent.

44. Ameranth has previously served Apple with infringement contentions in this action further describing the details of Apple's direct and indirect infringement of Ameranth's patents. Those infringement contentions are attached hereto as **Exhibit E** and incorporated herein by reference.

45. On information and belief, defendant Apple has indirectly infringed and continues to indirectly infringe one or more valid and enforceable claims of the '325 patent, in violation of 35 U.S.C. § 271(b), by actively, knowingly, and intentionally inducing direct infringement by other persons, by making, using, offering for sale or license and/or selling or licensing infringing systems,

products, and/or services in the United States without authority or license from Ameranth, including but not limited to the PBS.

46.   Apple infringes by its own actions and through, or in concert with, agents of Apple who are under the direction and control of Apple by virtue of contractual agreements between Apple and such parties, including, for example, IOS Developer Program Licensing Agreements and Passbook Marketing Agreements.

47. On information and belief, systems including the PBS, as deployed and/or used by Apple, its agents, distributors, partners, affiliates, licensees, third-party businesses, and/or their customers, infringe one or more valid and enforceable claims of the '325 patent, by, *inter alia*, doing, or providing the capability for doing, at least one of the following: (a) Generating and transmitting menus in a system including a central processing unit, a data storage device, a computer operating system containing a graphical user interface, one or more displayable main menus, modifier menus, and sub-modifier menus, and application software for generating a second menu and transmitting it to a wireless handheld computing device or a Web page; and/or (b) Enabling ticketing, reservations, and other hospitality functions via iPhone and iPod Touch devices as well as via Web pages, storing hospitality information and data on at least one central database, on at least one wireless handheld computing device, and on at least one Web server and Web page, and synchronizing applications and data, including but not limited to applications and data relating to orders, between at least one central database, wireless handheld computing devices, and at least one Web server and Web page.

48.   On information and belief, customers of Apple use the PBS in a manner that infringes upon one or more valid and enforceable claims of the '325 patent. Apple provides instruction and direction regarding the use of the PBS and

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

advertises, promotes, and encourages the use of the PBS in a manner known and intended to infringe Ameranth's patents.

49.   On information and belief, Apple actively induces others to infringe the '325 patent in violation of 35 U.S.C. §271(b) by actively, knowingly and intentionally encouraging, aiding and abetting customers of Apple, including consumers and those businesses identified elsewhere in this complaint, to use the infringing PBS in the United States without authority or license from Ameranth, with the knowledge that said customers of Apple were directly infringing the '325 patent.  For example, Apple describes its PBS as an 'Ecosystem': "There are three major parts to the Passbook life cycle; creation, management and redemption. Passbook handles the middle, it lets users view and manage their passes and provides lock screen integration. You are responsible for the two ends; creating passes and redeeming passes."

50.   Apple has been aware of the patent family which includes the '325 patent since well before the complaint in this action was filed.  Apple has been aware of the '850 patent (the first patent to issue in this family) since at least March 31, 2010, when the '850 patent was cited as a prior art reference in two Apple iPhone patent applications which issued to Apple under named inventors Bas Ording and Steven P. Jobs.  Despite having knowledge of the '850 patent for two and one half years before Ameranth brought suit on the '850 patent, Apple continued its infringing conduct. Also, three of the patents in this Ameranth patent family have been asserted in several patent enforcement actions against Apple business partners, as noted above, including OpenTable (lawsuit filed in August 2011).  Due to the degree of integration between Apple and OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the integration of OpenTable functionality into Apple's iOS6, it is implausible that Apple was not informed of the Ameranth suit against OpenTable as early as 2011.  Further, Apple has had knowledge of this lawsuit and the claims asserted herein, since the

filing of the original complaint in September of 2012, and has continued its infringing activities nonetheless. Apple has thus obtained the level of knowledge required to support a claim for inducement of infringement regarding Apple's actions involving the Apple PBS in numerous different and independent ways.

51.   On information and belief, Apple contributorily infringes and continues to contributorily infringe one or more valid and enforceable claims of the '325 patent, in violation of 35 U.S.C. § 271(c), by making, using, offering to sell and/or selling components of systems on which claims of the '325 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '325 patent.

52.   By making, using, distributing, selling, offering, offering to sell or license and/or selling or licensing the PBS, Apple provides non-staple articles of commerce to others, including those businesses identified elsewhere in this complaint, for use in infringing systems, products, and/or services.  Additionally, Apple provides instruction and direction regarding the use of the PBS and advertises, promotes, and encourages the use of the PBS.  Users of the PBS directly infringe one or more valid and enforceable claims of the '325 patent, for the reasons set forth hereinabove.

53.   Apple has had knowledge of the '325 patent, at least as early as the filing of the original complaint in this action.  Apple further has had knowledge, at least as early as that date,  that the PBS "boarding pass" and "event ticketing" pass styles are non-staple articles of commerce that have no substantial non-infringing uses, in that this is specialized software designed and intended for use, and actually used as a material part of the claimed invention and used in ticketing and reservations systems that infringe the '325 patent as set forth herein, including the ticketing and/or reservations systems of Fandango, StubHub, Ticketmaster, LiveNation, and Starwood.  In addition, Apple has had knowledge of the patent family which includes the '325 patent since March 2010 as discussed above.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

1   Apple has thus obtained the level of knowledge required to support a claim for
2   contributory infringement in numerous different and independent ways.

3        54.   On information and belief, the aforesaid infringing activities of
4   defendant Apple have been done with knowledge and willful disregard of
5   Ameranth's patent rights, making this an exceptional case within the meaning of
6   35 U.S.C. § 285. As detailed above, Apple has had knowledge of the patent
7   family which includes the '325 patent since at least March 31, 2010, well before
8   the filing of the complaint in this action.   Also, three of the patents in this
9   Ameranth patent family have been asserted in several patent enforcement actions
10  against Apple business partners, as noted above, including OpenTable (lawsuit
11  filed in August 2011).   Due to the degree of integration between Apple and
12  OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the
13  integration of OpenTable functionality into Apple's iOS6, it is implausible that
14  Apple was not informed of the Ameranth suit against OpenTable as early as
15  2011.  Further, Apple has had knowledge of this lawsuit, and the claims asserted
16  herein, since the filing of the original complaint in September of 2012, and has
17  continued its infringing activities nonetheless.  Apple has thus obtained the level
18  of knowledge required to support a claim for willful infringement in numerous
19  different and independent ways.   Apple's decision to continue its infringing
20  activities after obtaining said knowledge constitutes objectively reckless behavior
21  justifying a finding of willfulness.

22       55.   The aforesaid infringing activity of defendant Apple has directly and
23  proximately caused damage to plaintiff Ameranth, including loss of profits from
24  sales or licensing revenues it would have made but for the infringements.  Unless
25  enjoined, the aforesaid infringing activity will continue and cause irreparable
26  injury to Ameranth for which there is no adequate remedy at law.

27  //

28  //

## COUNT III

### Patent Infringement (U.S. Pat. No. 6,982,733)

### (35 U.S.C. § 271)

56.  Plaintiff reiterates and reincorporates the allegations set forth in paragraphs 1-55 above as if fully set forth herein.

57.  On January 3, 2006, United States Patent No. 6,982,733 entitled "Information Management and Synchronous Communications System with Menu Generation, and Handwriting and Voice Modification of Orders" ("the '733 patent") (a true and correct copy of which is attached hereto as **Exhibit C**) was duly and legally issued by the United States Patent & Trademark Office.

58.  Plaintiff Ameranth is the lawful owner by assignment of all right, title and interest in and to the '733 patent.

59.  Siri is a speech-recognition and voice control/command application available on  certain models of the iPhone and iPod Touch.  With iOS 6, Siri is integrated with third-party systems/products/services including, *inter alia*, OpenTable.  Siri sends commands through a remote server using a wireless data connection.

60.  On information and belief, Apple directly infringes and continues to directly infringe one or more valid and enforceable claims of the '733 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale or license and/or selling or licensing infringing systems, products, and/or services in the United States without authority or license from Ameranth, including but not limited to the PBS and Siri.

61.  Ameranth has previously served Apple with infringement contentions in this action further describing the details of Apple's direct and indirect infringement of Ameranth's patents.  Those infringement contentions are attached hereto as **Exhibit E** and incorporated herein by reference.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

62.   On information and belief, defendant Apple has indirectly infringed and continues to indirectly infringe one or more valid and enforceable claims of the '733 patent, in violation of 35 U.S.C. § 271(b), by actively, knowingly, and intentionally inducing direct infringement by other persons, by making, using, offering for sale or license and/or selling or licensing infringing systems, products, and/or services in the United States without authority or license from Ameranth, including but not limited to the PBS and Siri.

63.   Apple infringes by its own actions and through, or in concert with, agents of Apple who are under the direction and control of Apple by virtue of contractual agreements between Apple and such parties, including, for example, IOS Developer Program Licensing Agreements and Passbook Marketing Agreements.

64.   On information and belief, systems including one or more of the PBS, and/or Siri, as deployed and/or used by Apple, its agents, distributors, partners, affiliates, licensees, third-party businesses, and/or their customers, infringe one or more valid and enforceable claims of the '733 patent, by doing, or providing the capability for doing, at least one of the following: (a) Generating menus in a system including a central processing unit,  a data storage device connected to said central processing unit,  an operating system including a graphical user interface, a first menu stored on said data storage device, application software for generating a second menu from said first menu that facilitates the generation of the second menu by allowing selection of items from the first menu, addition of items to the second menu and assignment of parameters to items in the second menu using the graphical user interface of said operating system and data comprising the second menu is synchronized between the data storage device connected to the central processing unit and at least one other computing device, and said second menu is manually modified by voice recording or capture or recognition after generation; and/or (b) Generating menus in a system including a microprocessor, a display

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

1   device, a data and instruction input device, a data storage device for storing

2   information and instructions entered through said data and instruction input means

3   or information generated by said microprocessor, an operating system, a master

4   menu stored on said data storage device for generating a modified menu, and

5   application software, wherein said microprocessor, operating system and

6   application software are operative to display the master menu on the display

7   device in response to instructions programmed into said microprocessor, operating

8   system, application software and information and instructions entered through said

9   data input device, and said microprocessor, operating system and application

10   software are operative to create the modified menu from said master menu in

11   response to information and instructions entered through said data and instruction

12   input device and data comprising the modified menu is synchronized between the

13   data storage device and at least one other computing device, wherein said

14   modified menu is manually modified after generation.

15       65. On information and belief, customers of Apple use the PBS and Siri in a

16   manner that infringes upon one or more valid and enforceable claims of the '733

17   patent. Apple provides instruction and direction regarding the use of the PBS and

18   Siri and advertises, promotes, and encourages the use of the PBS and Siri in a

19   manner known and intended to infringe Ameranth's patents.

20       66. On information and belief, Apple actively induces others to infringe the

21   '733 patent in violation of 35 U.S.C. §271(b) by actively, knowingly and

22   intentionally encouraging, aiding and abetting customers of Apple, including

23   consumers and those businesses identified elsewhere in this complaint, to use the

24   infringing PBS and Siri in the United States without authority or license from

25   Ameranth, with the knowledge that said customers of Apple were directly

26   infringing the '733 patent. For example, Apple describes its PBS as an

27   'Ecosystem': "There are three major parts to the Passbook life cycle; creation,

28   management and redemption. Passbook handles the middle, it lets users view and

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No. 12-CV-2350-IEG -BGS

manage their passes and provides lock screen integration. You are responsible for the two ends; creating passes and redeeming passes."

67.   Apple has been aware of the patent family which includes the '733 patent since well before the complaint in this action was filed.  Apple has been aware of the '850 patent (the first patent to issue in this family) since at least March 31, 2010, when the '850 patent was cited as a prior art reference in two Apple iPhone patent applications which issued to Apple under named inventors Bas Ording and Steven P. Jobs.  Despite having knowledge of the '850 patent for two and one half years before Ameranth brought suit on the '850 patent, Apple continued its infringing conduct. Also, three of the patents in this Ameranth patent family have been asserted in several patent enforcement actions against Apple business partners, as noted above, including OpenTable (lawsuit filed in August 2011).  Due to the degree of integration between Apple and OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the integration of OpenTable functionality into Apple's iOS6, it is implausible that Apple was not informed of the Ameranth suit against OpenTable as early as 2011.  Further, Apple has had knowledge of this lawsuit, and the claims asserted herein, since the filing of the original complaint in September of 2012, and has continued its infringing activities nonetheless. Apple has thus obtained the level of knowledge required to support a claim for inducement of infringement regarding Apple's actions involving the Apple PBS and/or Siri in numerous different and independent ways.

68.   On information and belief, Apple contributorily infringes and continues to contributorily infringe one or more valid and enforceable claims of the '733 patent, in violation of 35 U.S.C. § 271(c), by making, using, offering to sell and/or selling components of systems on which claims of the '733 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '733 patent.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

69.   By making, distributing, selling, offering, offering to sell or license and/or selling or licensing the PBS, Apple provides non-staple articles of commerce to others, including those businesses identified elsewhere in this complaint, for use in infringing systems, products, and/or services.  Additionally, Apple provides instruction and direction regarding the use of the PBS and advertises, promotes, and encourages the use of the PBS in a manner known and intended to infringe Ameranth's patents.  Users of the PBS directly infringe one or more valid and enforceable claims of the '733 patent, for the reasons set forth hereinabove.

70.   Apple has had knowledge of the '733 patent, as set forth above, at least as early as the filing of this complaint.  Apple further has had knowledge, at least as early as that date,  that the PBS "boarding pass" and "event ticketing" pass styles are non-staple articles of commerce that have no substantial non-infringing uses, in that this is specialized software designed and intended for use, and actually used as a material part of the claimed invention and used in ticketing and reservations systems that infringe the '733 patent as set forth herein, including the ticketing and/or reservations systems of Fandango, StubHub, Ticketmaster, LiveNation, and Starwood.  In addition, Apple has had knowledge of the patent family which includes the '733 patent since March 2010 as discussed above. Apple has thus obtained the level of knowledge required to support a claim for contributory infringement in numerous different and independent ways.

71.  On information and belief, the aforesaid infringing activities of defendant Apple have been done with knowledge and willful disregard of Ameranth's patent rights, making this an exceptional case within the meaning of 35 U.S.C. § 285.  As detailed above, Apple has had knowledge of the patent family which includes the '733 patent since at least March 31, 2010, well before the filing of the complaint in this action.  Also, three of the patents in this Ameranth patent family have been asserted in several patent enforcement actions

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

against Apple business partners, as noted above, including OpenTable (lawsuit filed in August 2011).  Due to the degree of integration between Apple and OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the integration of OpenTable functionality into Apple's iOS6, it is implausible that Apple was not informed of the Ameranth suit against OpenTable as early as 2011.  Further, Apple has had knowledge of this lawsuit, and the claims asserted herein, since the filing of the original complaint in September of 2012, and has continued its infringing activities nonetheless.  Apple has thus obtained the level of knowledge required to support a claim for willful infringement in numerous different and independent ways.  Apple's decision to continue its infringing activities after obtaining said knowledge constitutes objectively reckless behavior justifying a finding of willfulness.

72.   The aforesaid infringing activity of defendant Apple has directly and proximately caused damage to plaintiff Ameranth, including loss of profits from sales or licensing revenues it would have made but for the infringements.  Unless enjoined, the aforesaid infringing activity will continue and cause irreparable injury to Ameranth for which there is no adequate remedy at law.

## COUNT IV

### Patent Infringement (U.S. Pat. No. 8,146,077)

### (35 U.S.C. § 271)

73.   Plaintiff reiterates and incorporates the allegations set forth in paragraphs 1-72 above as if fully set forth herein.

74.  On March 27, 2012, United States Patent No. 8,146,077 entitled "Information Management and Synchronous Communications System with Menu Generation, and Handwriting and Voice Modification of Orders" (a true copy of which is attached hereto as **Exhibit D** and incorporated herein by reference) was duly and legally issued by the United States Patent & Trademark Office.

75.   Plaintiff Ameranth is the lawful owner by assignment of all right, title and interest in and to the '077 patent.

76.   On information and belief, Apple directly infringes and continues to directly infringe one or more valid and enforceable claims of the '077 patent, in violation of 35 U.S.C. § 271(a) by making, using, offering for sale or license and/or selling or licensing infringing systems, products, and/or services in the United States without authority or license from Ameranth, including but not limited to the PBS.

77.   Ameranth has previously served Apple with infringement contentions in this action further describing the details of Apple's direct and indirect infringement of Ameranth's patents.   Those infringement contentions are attached hereto as **Exhibit E** and incorporated herein by reference.

78.   On information and belief, defendant Apple has indirectly infringed and continues to indirectly infringe one or more valid and enforceable claims of the '077 patent, in violation of 35 U.S.C. § 271(b), by actively, knowingly, and intentionally inducing direct infringement by other persons, by making, using, offering for sale or license and/or selling or licensing infringing systems, products, and/or services in the United States without authority or license from Ameranth, including but not limited to the PBS.

79.   Apple infringes by its own actions and through, or in concert with, agents of Apple who are under the direction and control of Apple by virtue of contractual agreements between Apple and such parties, including, for example, IOS Developer Program Licensing Agreements and Passbook Marketing Agreements.

80.   On information and belief, systems including the PBS, as deployed and/or used by Apple, its agents, distributors, partners, affiliates, licensees, third-party businesses, and/or their customers, infringe one or more valid and enforceable claims of the '077 patent, by, *inter alia*, doing, or providing

the capability for doing, at least one of the following: (a) Configuring and transmitting menus in a system including a central processing unit, a data storage device, a computer operating system containing a graphical user interface, one or more displayable master menus, menu configuration software enabled to generate a menu configuration for a wireless handheld computing device in conformity with a customized display layout, and enabled for synchronous communications and to format the menu configuration for a customized display layout of at least two different wireless handheld computing device display sizes, and/or (b) Enabling ticketing, reservations, and other hospitality functions via iPhone and iPod Touch devices as well as via Web pages, storing hospitality information and data on at least one database, on at least one wireless handheld computing device, and on at least one Web server and Web page, and synchronizing applications and data, including but not limited to applications and data relating to orders, between at least one database, wireless handheld computing devices, and at least one Web server and Web page; utilizing communications control software enabled to link and synchronize hospitality information between at least one database, wireless handheld computing device, and web page, to display information on web pages and on different wireless handheld computing device display sizes, and to allow information to be entered via Web pages, transmitted over the internet, and automatically communicated to at least one database and to wireless handheld computing devices; allowing information to be entered via wireless handheld computing devices, transmitted over the internet, and automatically communicated to at least one database and to Web pages.

81.   On information and belief, customers of Apple use the PBS in a manner that infringes upon one or more valid and enforceable claims of the '077 patent. Apple provides instruction and direction regarding the use of the PBS and advertises, promotes, and encourages the use of the PBS in a manner known and intended to infringe Ameranth's patents.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

82.   Apple actively induces others to infringe the '077 patent in violation of 35 U.S.C. §271(b) by actively, knowingly and intentionally encouraging, aiding and abetting customers of Apple, including consumers and those businesses identified elsewhere in this complaint, to use the infringing PBS in the United States without authority or license from Ameranth, with the knowledge that said customers of Apple were directly infringing the '077 patent.  For example, Apple describes its PBS as an 'Ecosystem':  "There are three major parts to the Passbook life cycle; creation, management and redemption. Passbook handles the middle, it lets users view and manage their passes and provides lock screen integration. You are responsible for the two ends; creating passes and redeeming passes."

83.   Apple has been aware of the patent family which includes the '077 patent since well before the complaint in this action was filed.  Apple has been aware of the '850 patent (the first patent to issue in this family) since at least March 31, 2010, when the '850 patent was cited as a prior art reference in two Apple iPhone patent applications which issued to Apple under named inventors Bas Ording and Steven P. Jobs.  Despite having knowledge of the '850 patent for two and one half years before Ameranth brought suit on the '850 patent, Apple continued its infringing conduct. Also, three of the patents in this Ameranth patent family have been asserted in several patent enforcement actions against Apple business partners, as noted above, including OpenTable (lawsuit filed in August 2011).  Due to the degree of integration between Apple and OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the integration of OpenTable functionality into Apple's iOS6, it is implausible that Apple was not informed of the Ameranth suit against OpenTable as early as 2011.  Further, Apple has had knowledge of this lawsuit, and the claims asserted herein, since the filing of the original complaint in September of 2012, and has continued its infringing activities nonetheless. Apple has thus obtained the level of knowledge

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

1  required to support a claim for inducement of infringement regarding Apple's

2  actions involving the Apple PBS in numerous different and independent ways.

3     84.   On information and belief, Apple also has actively induced, and

4  continues to actively induce, others to infringe the '077 patent, in violation of 35

5  U.S.C. §271(b), by actively, knowingly, and intentionally encouraging, aiding

6  and abetting customers and business partners of Apple, including, *inter alia*,

7  software developers and businesses including those identified elsewhere in this

8  complaint, to use the iOS Simulator in making, using, selling, and/or offering for

9  sale infringing systems/products/services (including encouraging, aiding and

10  abetting use by such parties of Ameranth's inventive "preview" functionality as

11  recited, *inter alia*, in '077 claim 8) without authority or license from Ameranth.

12  Further, an aspect of the iOS Simulator which is directly relevant to aspects of the

13  claims of the '077 patent is that the Simulator allows developers to simulate the

14  different iPhone screen sizes (for, *e.g.*, different phone models) merely by

15  selecting the screen size from a drop-down menu in the simulator.  *See, e.g.*,

16  screenshot example at http://stackoverflow.com/questions/12462253/how-can-i-

17  set-the-iphone-5-in-simulator-in-the-new-xcode-4-5-gm.   iOS Simulator allows

18  developers to simulate the environment of iPhone and iPad devices running any

19  iOS version from the most current, back to iOS 3.4, and to build, test, and debug

20  apps and web apps on Mac computers.   Apple provides extensive technical

21  documentation and support to encourage, facilitate, and assist in the development

22  of iPhone/iPad apps and the offering of said apps in Apple's App Store.   As

23  Apple explains in its own documentation, "The iOS Simulator allows you to

24  rapidly prototype and test builds of your app during the development process.

25  Installed as part of the Xcode tools along with the iOS SDK, iOS Simulator runs

26  on your Mac and behaves like a standard Mac app while simulating an iPhone or

27  iPad environment. Think of the simulator as a preliminary testing tool to use

28  before testing your app on an actual device. … iOS Simulator enables you to

-32-

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No.  12-CV-2350-IEG -BGS

1   simulate several iOS devices and several versions of the iOS operating system.

2   Each simulated software version is considered its own simulation environment,

3   independent of the others, with its own settings and files. These settings and files

4   exist on every device you test within a simulation environment."

5   85.   As discussed above, Apple's marketing materials encourage use of the

6   iOS Simulator in a way that infringes claims of the '077 patent, and tout the

7   advantages of such use to achieve the same results/functionality provided by the

8   '077 claims.   In offering and promoting its IOS Simulator, Apple is actively

9   encouraging all iOS developers to use that tool.  Customers and business partners

10  of Apple directly infringe claims of the '077 patent by using the iOS Simulator in

11  making,    using,    selling,    and/or    offering    for    sale    infringing

12  systems/products/services including, *inter alia*,  online/mobile ticketing systems

13  of AMC, Fandango, Major League Baseball, Ticketmaster, LiveNation, StubHub,

14  Eventbrite, Ticketfly, Ticketbiscuit, Interactive Ticketing and Goldstar,  systems

15  for providing online/mobile gift cards for restaurants and other establishments,

16  Starbucks Coffee online/mobile system for providing prepaid cards and loyalty

17  cards, Starwood hotel's system for providing reservations and loyalty cards

18  (including a unique Passbook card for each of Starwood's more than 1,000

19  properties), online/mobile systems for managing and booking tours and other

20  hospitality events booked through Checkfront, Discover's online/mobile system

21  for providing e-certificates/loyalty bonuses, and Amtrak, American Airlines,

22  Delta Airlines, Air Canada, Lufthansa, and United Airlines online/mobile

23  systems for passenger ticketing and boarding passes, and other customers and

24  business partners of Apple who use the iOS simulator in providing, *e.g*., point of

25  sale, online and mobile ordering, loyalty, restaurant reservations, hotel

26  reservations and other hospitality functions and/or services including, *inter alia*,

27  Domino's Pizza, Seamless, Micros Systems, OpenTable, Hyatt Hotels and OLO

28  Online Ordering.

-33-

86.   As detailed above, Apple has had knowledge of the patent family which includes the '077 patent since at least March 31, 2010, well before the filing of the complaint in this action.  Also, three of the patents in this Ameranth patent family have been asserted in several patent enforcement actions against Apple business partners, as noted above, including OpenTable (lawsuit filed in August 2011).  Due to the degree of integration between Apple and OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the integration of OpenTable functionality into Apple's iOS6, it is implausible that Apple was not informed of the Ameranth suit against OpenTable as early as 2011.   Further, Apple has had knowledge of this lawsuit, and the claims asserted herein, since the filing of the original complaint in September of 2012, and has continued its infringing activities nonetheless. Apple has thus obtained the level of knowledge required to support a claim for inducement of infringement regarding Apple's actions involving the Apple iOS Simulator in numerous different and independent ways.

87.   On information and belief, Apple contributorily infringes and continues to contributorily infringe one or more valid and enforceable claims of the '077 patent, in violation of 35 U.S.C. § 271(c), by making, using, offering to sell and/or selling components of systems on which claims of the '077 patent read, constituting a material part of the invention, knowing that the components were especially adapted for use in systems which infringe claims of the '850 patent.

88.   By making, distributing, selling, offering, offering to sell or license and/or selling or licensing the PBS, Apple provides non-staple articles of commerce to others, including those businesses identified elsewhere in this complaint, for use in infringing systems, products, and/or services.  Additionally, Apple provides instruction and direction regarding the use of the PBS and advertises, promotes, and encourages the use of the PBS in a manner known and intended to infringe Ameranth's patents. Users of the PBS directly infringe one

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

1   or more valid and enforceable claims of the '077 patent, for the reasons set forth

2   hereinabove.

3       89.   Apple has long had knowledge of the patent family which includes the

4   '077 patent, as set forth above, at least as early as March 31, 2010. Apple further

5   has had knowledge, at least as early as that date,  that the PBS "boarding pass"

6   and "event ticketing" pass styles are non-staple articles of commerce that have no

7   substantial non-infringing uses, in that this is specialized software designed and

8   intended for use, and actually used as a material part of the claimed invention and

9   used in ticketing and reservations systems that infringe the '077 patent as set

10   forth herein, including the ticketing and/or reservations systems of Fandango,

11   StubHub, Ticketmaster, LiveNation, and Starwood.  In addition, Apple has had

12   knowledge of the patent family which includes the '077 patent since March 2010

13   as discussed above.  Apple has thus obtained the level of knowledge required to

14   support a claim for contributory infringement in numerous different and

15   independent ways.

16       90.   On information and belief, the aforesaid infringing activities of

17   defendant Apple have been done with knowledge and willful disregard of

18   Ameranth's patent rights, making this an exceptional case within the meaning of

19   35 U.S.C. § 285.  As detailed above, Apple has had knowledge of the patent

20   family which includes the '077 patent since at least March 31, 2010, well before

21   the filing of the complaint in this action.  Also, three of the patents in this

22   Ameranth patent family have been asserted in several patent enforcement actions

23   against Apple business partners, as noted above, including OpenTable (lawsuit

24   filed in August 2011).  Due to the degree of integration between Apple and

25   OpenTable including, *inter alia*, "direct SIRI integration" into OpenTable and the

26   integration of OpenTable functionality into Apple's iOS6, it is implausible that

27   Apple was not informed of the Ameranth suit against OpenTable as early as

28   2011.  Further, Apple has had knowledge of this lawsuit, and the claims asserted

1    herein, since the filing of the original complaint in September of 2012, and has

2    continued its infringing activities nonetheless.  Apple has thus obtained the level

3    of knowledge required to support a claim for willful infringement in numerous

4    different and independent ways.   Apple's decision to continue its infringing

5    activities after obtaining said knowledge constitutes objectively reckless behavior

6    justifying a finding of willfulness.

7        91.   The aforesaid infringing activity of defendant Apple has directly and

8    proximately caused damage to plaintiff Ameranth, including loss of profits from

9    sales or licensing revenues it would have made but for the infringements.  Unless

10   enjoined, the aforesaid infringing activity will continue and cause irreparable

11   injury to Ameranth for which there is no adequate remedy at law.

12                              **<u>PRAYER FOR RELIEF</u>**

13       WHEREFORE, plaintiff Ameranth respectfully prays for judgment against

14   defendant Apple, as follows:

15       1.     Adjudging that the manufacture, use, offer for sale or license and/or

16   sale or license of the PBS directly and indirectly infringes valid and enforceable

17   claims of the '850 patent, and the '325 patent, and the '733 patent, and the '077

18   patent, as set forth hereinabove;

19       2.     Adjudging that the manufacture, use, offer for sale or license and/or

20   sale or license of the iOS Simulator indirectly infringes valid and enforceable

21   claims of the '850 patent, and the '077 patent, as set forth hereinabove;

22       3.     Adjudging that Apple has infringed, actively induced others to

23   infringe and/or contributorily infringed valid and enforceable claims of the '850

24   patent, and the '325 patent, and the '733 patent, and the '077 patent, as set forth

25   hereinabove;

26       4.     Adjudging that Apple's direct and/or indirect infringement of the

27   valid and enforceable claims of the '850 patent, and the '325 patent, and the '733

28   patent, and the '077 patent, has been knowing and willful;

5.      Enjoining Apple, and its officers, directors, employees, attorneys, agents, representatives, parents, subsidiaries, affiliates and all other persons acting in concert, participation or privity with Apple, and their successors and assigns, from infringing, contributorily infringing and/or inducing others to infringe the valid and enforceable claims of the '850 patent, and the '325 patent, and the '733 patent, and the '077 patent;

6.      Awarding Ameranth the damages it has sustained by reason of Apple's infringement, together with interest and costs pursuant to 35 U.S.C. § 284;

7.      Awarding Ameranth increased damages of three times the amount of damages found or assessed against Apple by reason of the knowing, willful and deliberate nature of Apple's acts of infringement pursuant to 35 U.S.C. § 284;

8.      Adjudging this to be an exceptional case and awarding Ameranth its attorney's fees pursuant to 35 U.S.C. §285;

9.      Awarding to Ameranth its costs of suit, and interest as provided by law; and

10.     Awarding to Ameranth such other and further relief that this Court may deem just and proper.

//
//
//
//
//
//
//
//
//
//

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS

1

## **DEMAND FOR JURY TRIAL**

2      Ameranth demands trial by jury of its claims set forth herein to the

3  maximum extent permitted by law.

4

5                                    Respectfully submitted,

6  Dated: August 26, 2013            CALDARELLI HEJMANOWSKI & PAGE LLP

7                                    By:*/s/ William J. Caldarelli*
                                         William J. Caldarelli
8
                                    FABIANO LAW FIRM, P.C.
9                                    Michael D. Fabiano

10                                   OSBORNE LAW LLC
                                     John W. Osborne
11
                                    WATTS LAW OFFICES
12                                   Ethan M. Watts

13                                   **Attorneys for Plaintiff AMERANTH, INC.**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT
Case No.  12-CV-2350-IEG -BGS